## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KEVIN MEHLHOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0267-CVE-TLW |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 21) of the magistrate judge recommending that the Commissioner's decision to deny plaintiff's claim for disability benefits be reversed and remanded in part and affirmed in part. Plaintiff has filed an objection (Dkt. # 22) to the Report and Recommendation as to two issues on which the magistrate judge recommended that the Commissioner's decision be affirmed. Defendant has filed a response and objection (Dkt. # 23), and defendant asks the Court to reject all of plaintiff's arguments and affirm the ALJ's decision in its entirety.

## I.

On September 23, 2011, plaintiff filed an application for disability benefits alleging a date of onset of disability of April 1, 2011, and he was 51 years when his application was filed. Dkt. # 13-5, at 4. Plaintiff's application was denied on the ground that he retained the residual functional capacity (RFC) to perform his past relevant work. Dkt. # 13-3, at 2-4. Plaintiff requested reconsideration of the initial denial of his application, and his application was again denied. Dkt.

# 13-4, at 15-17.  Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was set for August 15, 2012.

Plaintiff appeared at the hearing and he was represented by counsel.  Plaintiff's counsel argued that plaintiff could "bend, left, and twist no more than 15 minutes in an hour" and lifting would be limited to 25 pounds due to degenerative disc disease and a bulging disc. Dkt. # 13-2, at 47. Counsel also argued that plaintiff suffered from a major depressive disorder, and he claimed that plaintiff had a low IQ and was "borderline illiter[ate]." Id. at 48.  Plaintiff attended school up to the ninth grade and he was in special education classes.  Id. at 49.  He had previously worked as a dishwasher and prep cook at a restaurant, but he claimed he stopped working after an incident when he believed that he was having a heart attack.  Id. at 51.  Plaintiff had a panic attack, rather than a heart attack, and he has not had another panic attack since that incident.  Id.  Plaintiff takes medication to treat depression, but the medication causes him to lose his temper.  Id.  He had difficulty working with others and he could not maintain a consistent pace of work, and plaintiff believed that his inability to read caused these problems.  Id. at 52.  Plaintiff stated that he was unable to read and his girlfriend had to read documents to him, but he could determine the correct change when making purchases at a store.  Id. at 53.  Plaintiff had previously worked at Wal-Mart, but he suffered an on-the-job injury and received a workers' compensation settlement.  Id. at 54. He was treated by John Marouk, M.D., following his injury, but Dr. Marouk did not believe that plaintiff was a candidate for back surgery.  Id.  Plaintiff claimed that he could not lift over 25 pounds, and he stated that he had difficulty performing tasks of daily life such as dressing and bathing.  Id. at 55.  Plaintiff also claimed that he had problems grasping small objects due to carpal tunnel syndrome, and he also claimed that he suffered from swelling in his legs due to diabetes.  Id.

at 57-59. Plaintiff has a driver's license, even though he claims to be unable to read, and he states that he can interpret road signs that have symbols. <u>Id.</u> at 64-65. Plaintiff has prior felony convictions for auto theft and burglary and he served a total of 16 years in prison. <u>Id.</u> at 66. The ALJ called a vocational expert (VE) to testify, and the VE identified at least three jobs that a hypothetical claimant with plaintiff's exertional limitations could perform assuming that the hypothetical claimant had a limited ability to read and write. <u>Id.</u> at 68-72.

The ALJ issued a written decision denying plaintiff's claim for disability benefits. <u>Id.</u> at 26-38. Plaintiff's alleged date of onset of disability was April 1, 2011, and he had not engaged in substantial gainful employment since that date. <u>Id.</u> at 28. At step two, the ALJ found that plaintiff had the severe impairments of diabetes mellitus, hypertension, degenerative disc disease, obesity, learning disorder, and depression, but he determined that plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff had the residual functional capacity to:

> perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to lift and/or carry up to twenty pounds occasionally and ten pounds frequently. The claimant is able to sit six hours in an eight-hour workday. The claimant is able to use his hands for hand control and feet for foot controls. The claimant is able to perform simple and some complex tasks and is able to interact with peers and co-workers for work-related tasks. The claimant is able to adapt to a work situation.

<u>Id.</u> at 30. The ALJ summarized plaintiff's testimony and, in relevant part, noted that plaintiff claims that he is unable to read the newspaper or a grocery list and he claims that his girlfriend read his social security paperwork to him. <u>Id.</u> at 31. Plaintiff stated that he had visited Dr. Marouk five times for treatment in relation to a workers' compensation claim, and plaintiff represented to Dr. Marouk that he could not lift more than 25 pounds or stoop, bend, or squat. <u>Id.</u> He complained of

pain in his hands and lower back, and he suffers from numbness in his legs. Id. He takes medication for depression and he takes insulin four times a day. Id. Plaintiff spends most of his time watching television, but he does use a computer for about an hour and he assists with some chores around the house. He is able to drive and he goes to the grocery store, but he ordinarily sits while his girlfriend shops. Id. at 31-32. He quit school in the ninth grade and he testified that he has been fired from jobs because he could not read. Id. at 32. However, he claims that he can interpret road signs and he was able to pass the driver's license exam, and he is able to "read and write some." Id.

The ALJ reviewed function reports completed by plaintiff and his friend Betty Hairl. In plaintiff's report, he states that he cannot read or write beyond a third grade level. Dkt. # 13-6, at 29. He claims that cannot sit for long periods of time due to back spasms, but he can visit friends, fish, and go to movies. Id. at 32. Hairl stated that plaintiff cannot bend, stand, lift, or walk without pain, and that plaintiff appears to suffer continuous back pain. Id. at 44. Plaintiff performs some household chores such as doing dishes and cleaning, and plaintiff goes shopping for groceries, clothes, and household supplies. Id. at 47. The ALJ gave Hairl's opinions little weight because she is not a medical professional. Id. at 32.

The ALJ also summarized the medical evidence in the record. Kenneth R. Trinidad, D.O., evaluated plaintiff in January 2008, and he opined that plaintiff could perform light work with lifting of no more than 20 pounds. Dkt. # 13-2, at 32. In September 2008, Dr. Marouk advised plaintiff that he was restricted from lifting more than 25 pounds and that he could "lift, bend or twist only 15 times an hour." Id. Plaintiff was diagnosed with benign hypertension in September 2011, and he complained of lower back pain. Id. at 33. Plaintiff visited the Morton Clinic and received education about prediabetes mellitus, and he reported to the diabetes clinic on December 16, 2011

for evaluation.  Id.  Plaintiff was diagnosed with chronic kidney disease, hyperlipidemia, obesity, and Type II diabetes mellitus.  Id.

The ALJ found that plaintiff was unable to return to his past relevant work as a baker/helper, kitchen helper, or building maintenance laborer, and he proceeded to step five to determine if there were jobs in sufficient numbers that plaintiff could perform with his RFC.  Id. at 36.  He found that plaintiff was a person approaching advanced age and that plaintiff had a "limited education."  Id. The ALJ found that there were at least three jobs that existed in sufficient numbers in the regional and national economies that plaintiff could perform with his RFC, and the ALJ concluded that plaintiff was not disabled.  Id. at 38.  Plaintiff filed a request for the Appeals Council to review the ALJ's decision, and the Appeals Council found no basis under its rules to review the ALJ's decision. Dkt. # 13-2, at 1-4.  Plaintiff filed this case seeking judicial review of the ALJ's decision to deny his claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation.  The magistrate judge recommended that the ALJ's decision be reversed in part and affirmed in part, and both parties have filed objections to the report and recommendation.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation.  Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999).  The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §

636(b)(1).  The Court may accept, reject, or modify the report and recommendation of the magistrate

judge in whole or in part.  Fed. R. Civ. P. 72(b).

## III.

Plaintiff does not object to the magistrate judge's recommendation that the case be reversed

and remanded for further consideration of plaintiff's educational level and for the ALJ to consider

whether certain permanent exertional limitations imposed by Dr. Marouk should be included in

plaintiff's RFC.  However, the magistrate judge found no merit plaintiff's arguments that the ALJ

failed to give a third party function report sufficient weight and that the ALJ conducted a faulty

credibility analysis, and plaintiff objects to these recommendations by the magistrate judge.  Dkt.

# 22.  Defendant objects to the magistrate judge's recommendation that the case be reversed and

remanded for further administrative proceedings.  Dkt. # 23.

The Social Security Administration has established a five-step process to review claims for

disability benefits.  See 20 C.F.R. § 404.1520.  The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged
> in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir.
> 2004)].  If not, the agency proceeds to consider, at step two, whether a claimant has
> "a medically severe impairment or impairments." *Id*.  An impairment is severe under
> the applicable regulations if it significantly limits a claimant's physical or mental
> ability to perform basic work activities.  *See* 20 C.F.R. § 404.1521.  At step three, the
> ALJ considers whether a claimant's medically severe impairments are equivalent to
> a condition "listed in the appendix of the relevant disability regulation."  *Allen*, 357
> F.3d at 1142.  If a claimant's impairments are not equivalent to a listed impairment,
> the ALJ must consider, at step four, whether a claimant's impairments prevent [him]
> from performing [his] past relevant work.  *See Id*.  Even if a claimant is so impaired,
> the agency considers, at step five, whether [he] possesses the sufficient residual
> functional capability to perform other work in the national economy.  *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The ALJ decided this case at step five of the

analysis.  At step five, the ALJ must consider a claimant's RFC, age, education, and work

experience to determine if other work exists that a claimant is able to perform.  Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled.  42 U.S.C. § 423(d)(2)(A).  However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010).  The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process.  Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).  The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency.  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).  The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence.  Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).  The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision.  Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

A.

Defendant objects to the magistrate judge's recommendation that the ALJ erred at step five by failing to adequately explain his finding that plaintiff had "limited education."  Dkt. # 23, at 1-2.  The magistrate judge reviewed the administrative record and noted that there was conflicting

evidence presented as to plaintiff's ability to read and write, but the ALJ did not explain in his written decision how he resolved the factual disputes as to plaintiff's literacy. The ALJ's entire finding on plaintiff's educational ability is that plaintiff "has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964)." Dkt. # 13-2, at 36. Defendant argues that plaintiff reported that he had completed the ninth grade and that he could read at a fifth or sixth grade level, and plaintiff fits squarely within the definition of "limited education" provided by 20 C.F.R. § 404.1564(b)(2). Dkt. # 17, at 4.

Plaintiff's ability to read and write is significant in this case, because the ALJ relied on Medical-Vocational Rule 202.04 (the Grids) to find that plaintiff was "not disabled," and a finding that plaintiff was illiterate would have resulted in a finding that plaintiff was disabled. Dkt. # 21, at 13. The ALJ found that plaintiff had a "limited education," which means that a claimant has "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualities to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). A person who has completed the 7th through 11th grades is generally considered to have a limited education. Id. There are categories of "illiteracy" and "marginal education" that are below the category of "limited education." In making this determination, an ALJ may rely on the numerical grade level in school completed by the claimant, unless there is some evidence in the administrative record showing that plaintiff's actual educational abilities may be higher or lower than what is represented by the grade level alone. 20 C.F.R. § 404.1564(b).

In this case, plaintiff's counsel argued at the administrative hearing that plaintiff could "barely read and write - - borderline illiteracy." Dkt. # 13-2, at 48. Plaintiff completed the ninth

grade but he testified that he was placed in special education classes.  Id. at 49.  Plaintiff was criticized at work for not completing tasks quickly enough, and he claims that his inability to read prevented him from working with sufficient persistence or pace.  Id. at 52.  He testified that he cannot read a grocery list or a newspaper, and he could not fill out the forms to file a claim for Social Security disability benefits.  Id. at 53.  Plaintiff does drive and he can interpret road signs with symbols, but he cannot read signs that have words.  Id. at 64-65.  However, plaintiff subsequently testified that he can read and write "some."  Id. at 67.  The ALJ summarized plaintiff's testimony in his written decision and referenced many of the statements identified above, but at step five he concluded without explanation that plaintiff had a "limited education."  Although not cited by the ALJ, there is a statement in a disability report that the interviewer observed plaintiff editing his Social Security forms, even though plaintiff claimed that he could not read.  Dkt. # 13-6, at 4.

The Court has reviewed the administrative record and finds that the ALJ failed to provide sufficient analysis to support his conclusion that plaintiff had a "limited education."  There is contradictory evidence concerning plaintiff's ability to read and write, and the ALJ could not have relied solely on plaintiff's grade level to make a finding as to plaintiff's education.  There is some evidence suggesting that plaintiff may have some ability to read and write and the ALJ may ultimately find that plaintiff has a "limited education," but the ALJ must expressly consider plaintiff's subjective claims that he is unable to read and write in making this determination.  The case should be remanded for further proceedings as to plaintiff's educational ability, because if plaintiff is ultimately determined to be illiterate this could warrant a finding that plaintiff is disabled.  At a minimum, the ALJ must provide additional explanation to support his finding that plaintiff qualifies as having a "limited education."

**B.**

Plaintiff objects to the magistrate judge's recommendations that the ALJ provided sufficient explanation for his decision to give little weight to a third party function report submitted by Hairl and that the ALJ's credibility analysis was adequate. Dkt. # 22, at 1-2. Plaintiff does not object to the magistrate judge's recommendation that the ALJ failed to include all limitations found by Dr. Marouk as part of plaintiff's RFC, but defendant does object to the report and recommendation on this issue and the Court will consider this issue de novo.

Plaintiff visited Dr. Marouk five times in 2008 for treatment following an on-the-job injury, and Dr. Marouk limited plaintiff to lifting no more than 25 pounds[1] and lifting, bending, and twisting no more than 15 times per hour. Dkt. # 13-7, at 15. Although plaintiff saw Dr. Marouk in 2008 and plaintiff alleged onset of disability in 2011, the restrictions imposed by Dr. Marouk were permanent restrictions. The ALJ noted that Dr. Marouk had previously imposed a restriction that plaintiff could lift, bend, or twist only 15 times an hour. Dkt. # 13-2, at 32. However, the RFC provided in the ALJ's written decision did not include any limitation on the number of times that plaintiff could lift, bend, or twist per hour. Id. at 30. The Court has already determined that this case should be remanded due to factual disputes concerning plaintiff's literacy and education, and the ALJ should explain whether the permanent restriction as to lifting, bending, and twisting identified by Dr. Marouk affects plaintiff's RFC. In the ALJ's written decision, he mentions that Dr. Marouk "advised [that] claimant could . . . lift, bend, or twist only 15 times an hour." Dkt. # 13-2, at 32.

---

[1]     Plaintiff's RFC included a limitation that plaintiff could not lift more than 20 pounds occasionally, and this limitation is more restrictive than the 25 pound restriction stated by Dr. Marouk. Plaintiff's objection is solely focused on the number of times that he may lift, bend, and twist per hour.

This somewhat misstates the actual restriction recommended by Dr. Marouk and the ALJ fails to explain why this restriction is not included in plaintiff's RFC. The ALJ's treatment of Dr. Marouk's permanent restriction as to lifting, bending, and twisting and the failure to include this restriction in the RFC should be clarified on remand.

## C.

As to plaintiff's remaining arguments concerning Hairl's third party function report and the ALJ's credibility analysis, the Court finds that it is unnecessary to consider these objections, because the Court has identified two errors warranting remand of the case for further administrative proceedings and the ALJ will be required to make additional findings that will undoubtedly affect his review of the administrative record and his credibility analysis. See Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996). The Court declines to issue an advisory opinion on issues that should be considered by the ALJ in the first instance upon remand of the case, and the report and recommendation is rejected to the extent that the magistrate judge recommends that the ALJ's decision be affirmed in part. Saterlee v. Astrue, 450 F. App'x 753, 755 (10th Cir. Dec. 12, 2011).

**IT IS THEREFORE ORDERED** that the Report and Recommendation is **accepted in part** and **rejected in part**; the report and recommendation is accepted as to the magistrate judge's recommendation that the case be reversed and remanded for further consideration of plaintiff's education and plaintiff's RFC, but the report and recommendation is rejected as to affirmance on any other issues. The Commissioner's decision to deny plaintiff's claim for disability benefits is **reversed and remanded**. A separate judgment is entered herewith.

**DATED** this 6th day of August, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE